KELLY, RESPONDENT, *v.* INDEPENDENT PUBLISHING CO.,
APPELLANT.

(No. 3,076.)

(Submitted February 14, 1912.   Decided March 2, 1912.)

[122 Pac. 735.]

*Libel—Newspapers—Privileged Publication—Defense—Belief in
Truth of Article—Malice—Presumptions—Statute of Limita-
tion—Time—Computation.*

Time—Computation—Day—Indivisible Unit.
  1.   Departure from the rule that the law regards the day as an indi-
visible unit is only permitted when it becomes necessary to inquire into
the order of sequence of two or more events occurring on the same day,
for the purpose of determining a question of priority of right or when
the computation includes only one day or less.

Same—Statute of Limitations—Computation of Time—Rule Applicable.
  2.   *Held,* that the rule prescribed by section 8067, Revised Codes, for
the computation of time, *i. e.:* "The time in which any act provided
by law is to be done is computed by excluding the first day and includ-
ing the last, unless the last day is a holiday, and then it is also ex-
cluded," is applicable to computations under the statute of limitations
in all cases, whether the actions be *ex contractu* or *ex delicto;* and that
therefore an action for a libel published on February 21, 1907, which
was commenced on February 23, 1909, was not barred by section 6448,
Revised Codes, February 21 falling on Sunday, and February 22 being
also a holiday.

Libel—Newspapers—What not Privileged Publication.
  3.   The publication of a story of inhuman treatment of children by
their mother, gathered by a reporter from gossip heard by him in the
sheriff's office, prior to the institution of any proceeding in court, *held*
not to have been privileged under section 3604, Revised Codes, which
provides that a fair and true report of a judicial or other public official
proceeding is privileged.

Same—Publications Libelous *Per Se.*
  4.   An article published by a newspaper that a mother had subjected
her daughter of tender age to unspeakable indignities, and forced her
to administer to the pleasure of her male companions, was libelous
*per se.*

Same—Defense—Belief in Truth—No Justification.
  5.   The fact that the reporter who wrote an article containing state-
ments which were libelous *per se* believed them to be fair and true, or
that defendant publisher, accepting them as true, published the story as
a fair and true one, did not constitute any excuse or justification in
an action for libel.   His defense consisted in showing that it was in
fact true.

Same—Malice—Presumptions.
  6.   Under section 8327, Revised Codes, where a publication by a news-
paper is libelous *per se,* the law presumes malice, in the absence of
lawful excuse, even though no spite or ill-will be shown.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Jenny Kelly, administratrix, against the Independent Publishing Company. From a judgment for plaintiff and an order denying its motion for a new trial, defendant appeals. Affirmed.

*Mr. E. C. Day,* and *Mr. Walter S. T. Brown,* for Appellant, submitted a brief; *Mr. Brown* argued the cause orally.

The cause of action accrued on the date of the publication, and the statute of limitations began to run as of that date. The day upon which the tort is committed is not to be excluded. (*Geneva Cooperage Co.* v. *Brown,* 124 Ky. 16, 30 Ky. Law Rep. 272, 98 S. W. 279; *Wilson's Admr.* v. *Illinois Cent. Ry. Co.* (Ky.), 92 S. W. 572; *Peterson* v. *Georgia Ry. & Bank,* 97 Ga. 798, 25 S. E. 370; *Shinn* v. *Tucker,* 33 Ark. 421; *Benoit* v. *New York Cent. Ry. Co.,* 94 N. Y. App. Div. 24, 87 N. Y. Supp. 951; *Vose* v. *Kuhn,* 45 Misc. Rep. 455, 92 N. Y. Supp. 34; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54, 79 Am. St. Rep. 565, 57 N. E. 168.) Admitting, for the sake of an argument, that the 21st of February, 1907, the date of publication, must be excluded from the computation of time, even then we submit that the plaintiff is not entitled to avail herself of the fact that the twenty-first day of February, 1909, was a holiday, for the reason that the statute with reference to the computation of time and the inclusion of the first and exclusion of the last days does not apply in construing the statute of limitations. That section of the Code, 8067, expressly states that it applies only to "acts provided by law."

If, however, the court should hold that the existence of the holidays on the 21st and 22d of February, 1909, would toll the statute, still the plaintiff did not plead such facts either in her complaint or in her replication, and consequently is not entitled to avail herself of them. Plaintiff, in her reply, denied generally that the action was barred by the statute of limitations. The authorities all hold to the rule that when the

statute of limitations is pleaded by defendant, plaintiff in his reply must set up the facts relied upon in avoidance of the plea. As where the plaintiff relies upon a new promise, fraud, infancy, or any other matter in defense of the plea of the statute of limitations, a general replication will not suffice; the facts relied on must be pleaded specifically. (25 Cyc. 1414, 1415; 13 Ency. of Pl. & Pr. 233.)

There is no allegation in the complaint of express malice or of special damages; hence the complaint did not state facts sufficient to constitute a cause of action for the publication of a privileged communication, or one not libelous *per se.*   Section 3604, Revised Codes, provides that a privileged publication is one made by fair and true report, without malice, of a judicial, legislative or other public official proceeding, or of anything said in the course thereof.   Where the newspaper article contains no statement that the plaintiff is guilty of the acts charged upon which an arrest has been made, but only purports to state the theories and report of the officers of the law in relation to the plaintiff's arrest and trial, the matters, being *quasi* privileged, are not libelous *per se.   (McClure* v. *Review Publishing Co.,* 38 Wash. 160, 80 Pac. 303.)   The privilege afforded to the newspaper of publishing fair and true reports of judicial proceedings is not confined to contested proceedings in open court, but extends to all judicial proceedings and applications, whether before magistrates, judges or courts *ex parte,* or on notice.   (*Stuart* v. *Press Publishing Co.,* 83 App. Div. 467, 82 N. Y. Supp. 401; see, also, *Atlanta News Publishing Co.* v. *Midlock,* 123 Ga. 714, 3 L. R. A., n. s., 1139, 51 S. E. 756.)   Under the New York Code, which is the same as ours, a substantially accurate report without malice, is privileged though the matter be untrue.   (*D'Auxy* v. *Star Co.,* 31 Misc. Rep. 388, 64 N. Y. Supp. 283.)   This privilege extends to all judicial proceedings, whether *ex parte* or not.   (*Stuart* v. *Press Pub. Co., supra; Nunnally* v. *Press Pub. Co.,* 110 App. Div. 10, 96 N. Y. Supp. 1042.   See, also, *Willman* v. *Press Pub. Co.,* 49 App. Div. 35, 63 N. Y. Supp. 515; *Gray* v. *Sampers,* 35 App. Div. 270, 55 N. Y. Supp. 3.)   Where the defendant pub-

45 Mont.—9

lished a fair account of the proceedings, the question of the truth or falsity of the charge is immaterial. (*Warner* v. *Press Pub. Co.*, 15 Daly, 545, 8 N. Y. Supp. 341.) The editor of a newspaper may lawfully publish the fact that a person has been arrested and upon what charge. (*Usher* v. *Severance*, 20 Me. 9, 37 Am. Dec. 33.) The courts recognize a distinction between a publication in a newspaper which merely quotes or refers to statements made by others, to which the newspaper gives no new sanction, and one where the publisher takes it upon himself to allege libelous facts. (*Burt* v. *Advertiser Newspaper Co.*, 154 Mass. 238, 13 L. R. A. 97, 28 N. E. 1.) Where the communication is made upon a privileged occasion, the burden is upon the plaintiff of showing express malice. (*Denver Public Warehouse Co.* v. *Holloway*, 34 Colo. 432, 114 Am. St. Rep. 171, 70 Ann. Cas. 840, 3 L. R. A., n. s., 696, 83 Pac. 131.) A newspaper may publish the fact that a person has been arrested and the charge upon which it is based, so long as it does not assume or assert that the person is guilty of the offense charged. (Newell on Defamation, p. 549; *Tresca* v. *Maddox*, 11 La. Ann. 206, 66 Am. Dec. 198; *Usher* v. *Severance*, 20 Me. 9, 37 Am. Dec. 33.) The question whether in a particular case a publication is to be deemed privileged—that is, whether the situation of the party making it and the circumstances attending it were such as to rebut the legal inference of malice—is a question of law, to be determined by the court in the first instance. (*Gassett* v. *Gilbert*, 6 Gray (Mass.), 97; *Denver P. W. Co.* v. *Holloway*, 34 Colo. 432, 114 Am. St. Rep. 171, 7 Ann. Cas. 840, 3 L. R. A., n. s., 696, 38 Pac. 131; *Redgate* v. *Roush*, 61 Kan. 480, 48 L. R. A. 236, 59 Pac. 1050; 25 Cyc. 412, and cases cited.)

Mere proof of falsity is not sufficient to establish malice unless it also appears that the defendant knew of its falsity at the time of the publication or was negligent in not ascertaining the truth. (*Barry* v. *McCollom*, 81 Conn. 293, 129 Am. St. Rep. 215, 70 Atl. 1035; *Abraham* v. *Baldwin*, 52 Fla. 151, 10 Ann. Cas. 1148, 10 L. R. A., n. s., 1051, 42 South. 591; *Ger  Sav. Bk.* v. *Fritz*, 135 Iowa, 44, 109 N. W. 1008; *Vial* v. *Larson*, 132 Iowa, 208, 109

N. W. 1007; *Tanner* v. *Stevenson,* 138 Ky. 578, 30 L. R. A., n. s., 200, 128 S. W. 878; *Schultz* v. *Guldenstein,* 144 Mich. 636, 108 N. W. 96; *Holmes* v. *Union,* 222 Mo. 556, 26 L. R. A., n. s., 1080, 121 S. W. 100; *Ashcroft* v. *Hammond,* 197 N. Y. 488, 90 N. E. 1117.)

For Respondent, there was a brief by *Mr. I. G. Denny,* and *Mr. J. O. Davies,* and oral argument by both.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for the publication of a libel. In the court below, the plaintiff had verdict and judgment. The defendant has appealed from the judgment and an order denying its motion for a new trial. The cause of action alleged is the publication by defendant, in the "Helena Daily Independent," on the morning of February 21, 1907, of and concerning the plaintiff the following article:

"Mother Accused by Her Children.

"Mrs. F. E. Miller, of Butte, is arrested on charge of assault, at the instance of Otto Schoenfeld, executive officer of the state bureau of child and animal protection, who was hurriedly summoned to Butte Tuesday night by W. H. Orr, of the Silver Bow County Humane Society. Mrs. F. E. Miller was arrested and placed in the county jail this afternoon on the charge of assault upon her fifteen year old daughter. The charge is but nominal and behind is a story of horrible brutality and a peculiar condition of domestic affairs, according to the three children of the woman. It is alleged by the older daughter who goes by the name of Ruth Harris, the latter the name of the woman's second husband, that the younger daughter, Helen, eleven years of age, has been compelled, at the command of the mother, to submit to unspeakable indignities forced upon her by men who have been repeatedly invited to their home at 1121 South Wyoming street, where the most indecent orgies are alleged to have been continued through the night.

"Threatened Their Lives.

"The mother, Mrs. Miller, is said to be a confirmed drunkard. It is alleged that on several occasions she has thrown a huge butcher knife at the children and has threatened to kill them if they were taken from her. The two girls were taken from school this afternoon by Mr. Schoenfeld, and they have been placed temporarily in the Paul Clark Home. The matter will be taken up before Judge Donlan to-morrow morning and the girls will probably be sent to the Orphans' Home in Helena. There is also a boy twelve years of age, and what disposition will be made of him has not yet been decided."

Among other defenses, the defendant pleaded the statute of limitations. Plaintiff interposed a denial. At the commencement of the trial, the defendant objected to the introduction of evidence, on the ground that, it appearing from the complaint that the publication was made on February 21, 1907, and that the complaint was not filed until February 23, 1909, the action was barred by the provision of the statute. The objection was overruled. At the close of the evidence, the defendant requested the court to direct a verdict in its favor. The request was denied. The contentions made in this court are based upon these two rulings. Some technical questions arising upon the form of the plea of the statute and the reply thereto are argued in the brief. We shall not notice these, because they do not affect the merits of these appeals.

It was admitted in the district court, and also at the argument in this court, that the article in question was published on the morning of February 21, 1907, and that this action was commenced on February 23, 1909. February 21, 1909, fell on Sunday, a holiday. The following day was also a holiday. The position of counsel for defendant is that in computing the two year period of limitation prescribed by the statute for actions for libel (Rev. Codes, sec. 6448) the day of publication must be included, because the right of action accrues on that day. Hence that the district court should have sustained the objection and held the action barred. If counsel's assumption is correct, their

conclusion is also; for if the two year period be computed, either in calendar years or in years of 365 days each, excluding the added day of the year 1908, a leap year (Rev: Codes, sec. 2029), by the rule relied on by counsel, the limitation expired at midnight on February 20, 1909. From this point of view, of course, the two holidays following are entirely outside of the limitation period and need not be considered. The question, therefore, is, first, whether in computing the limitation period the first day is to be excluded; and, if so, second, whether the two holidays are to be excluded also.

For most purposes, the law regards the day as an indivisible unit. It is only when it becomes necessary to inquire into the [1]   order of sequence of two or more events occurring on the same day, for the purpose of determining a question of priority of right, or when the computation includes only one day or less, that departure from this rule is permitted. (*Harmon* v. *Comstock Horse & Cattle Co.*, 9 Mont. 243, 23 Pac. 470; Rev. Codes, sec. 8071.) In *Lester* v. *Garland*, 15 Ves. Jr. 248, it was said: "Our law rejects fractions of a day more generally than the civil law does. The effect is to render the day a sort of indivisible point, so that an act done in the compass of it is no more referable to any one than to any other portion of it; but the act and day are coextensive, and therefore the act cannot be passed until the day is passed."

There is some confusion in the decisions of the courts upon the subject. In the case cited the conclusion was reached that no general rule can be laid down, because cases would occur the reason of which would require exceptions to be made. The result of this decision, however, was that earlier cases (*Norris* v. *Gawtry,* Hob. 139; *Bellasis* v. *Hester,* 1 Ld. Raym. 280; *Rex* v. *Adderley,* 2 Doug. 463; *Castle* v. *Burditt,* 3 T. E. 623, 100 Eng. Reprint, 768), which held that the computation was to be made from the act done and that the day on which the act was done should be included, were overruled. The rule applied in the cases last mentioned has been adopted by some of the courts in this country, as is shown by the following cases: *Geneva Coop-*

*erage Co.* v. *Brown,* 134 Ky. 16, 124 Am. St. Rep. 388, 30 Ky. Law Rep. 272, 98 S. W. 279; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54, 79 Am. St. Rep. 565, 57 N. E. 168; *Peterson* v. *Georgia R. R. & Banking Co.,* 97 Ga. 798, 25 S. E. 370; *Shinn* v. *Tucker,* 33 Ark. 421. This was formerly the rule in Massachusetts; the court basing its decision on *Norris* v. *Gawtry, supra (Presbrey* v. *Williams,* 15 Mass. 193) ; but in the case of *Seward* v. *Hayden,* 150 Mass. 158, 15 Am. St. Rep. 183, 5 L. R. A. 844, 22 N. E. 629, *Presbrey* v. *Williams* was overruled. The court said: "But [2] in computing time under statutes and contracts the law disregards fractions of a day, unless, on account of the subject matter, or for other important reasons, justice requires that they should be regarded. This rule is universally held applicable to computations under the statute of limitations." The current of authority supports the rule thus stated. (*Owen* v. *Slatter,* 26 Ala. 547, 62 Am. Dec. 745; *Blackman* v. *Nearing,* 43 Conn. 56, 21 Am. Rep. 634; *McCulloch* v. *Hopper,* 47 N. J. L. 189, 54 Am. Rep. 146; *Perkins* v. *Jennings,* 27 Wash. 145, 67 Pac. 590; *Warren* v. *Slade,* 23 Mich. 1, 9 Am. Rep. 70; *Grant* v. *Paddock.* 30 Or. 312, 47 Pac. 712; *Menges* v. *Frick,* 73 Pa. 137, 13 Am. Rep. 731; *Pugh* v. *Reat,* 107 Ill. 440; *Cowan* v. *Donaldson,* 95 Tenn. 322, 32 S. W. 457; *Spencer* v. *Haug,* 45 Minn. 231, 47 N. W. 794; *Nebola* v. *Minnesota Iron Co.,* 102 Minn. 89, 112 N. W. 880.) A collection of cases will be found in a note appended to the last case cited in 12 Ann. Cas. 56.

Most of the foregoing cases are founded upon contract. But, if the day is to be regarded as a unit, there is no reason why the rule, as applied to actions *ex contractu,* should not apply to actions *ex delicto* also; otherwise there is a lack of uniformity in its application, and the result is that in the latter class of cases the period of limitation is shortened by the portion of the day which has expired before the doing of the wrong out of which the cause of action arises. There is no sound reason why the distinction should be made. The statute provides: "The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last day

is a holiday, and then it is also excluded." (Rev. Codes, sec. 8067.) It was pointed out in *Perkins* v. *Jennings* and *Grant* v. *Paddock, supra,* that the purpose of this provision was to establish a general rule for the computation of time, in order that confusion may be avoided and harmony prevail. We think this is the correct view, because it furnishes a certain guide for the computation of time as applied to the statute of limitations in all cases, and also as applied to matters of procedure in the courts. The words "any act provided by law," as used in the statute, do not refer to acts which the law provides shall be done, but to acts which may be done within a specified time. The section has always been held by this court to apply to the time within which an appeal may be taken, to the time within which a notice of intention to move for a new trial may be given, or to the time within which any other motion or proceeding may be had in the course of litigation in courts (*Jackway* v. *Hymer,* 42 Mont. 168, 111 Pac. 720, and cases cited) ; and yet the doing of any of these things is not compulsory, because required by law to be done. They are to be done at the option of the parties. If the provision has no application to the time within which an action must be brought, then, by the same rule, it has no application to matters of procedure, and must be applied only to acts enjoined by law.

The rule of exclusion of the last day of the limitation when it falls on a holiday was recognized in this jurisdiction prior to the enactment of any legislation on the subject. (*Schnepel* v. *Mellen,* 3 Mont. 118.) We think the purpose of the legislation was also to settle the rule in this behalf, so that a person having a right to bring an action, or to do any other act in the course of legal proceedings, might have the whole of a legal day at the end of the prescribed period in which to exercise his option. In any event, it settles the rule of computation in both respects. The district court properly applied it to the exclusion of the day of publication, and also the two holidays appearing in succession on the 21st and 22d of February, 1909.

The second contention of counsel is that the court erred in refusing to direct a verdict for defendant, because the evidence disclosed that the publication of the article was privileged. [3] Section 3604, Revised Codes, declares: "A privileged publication is one made: * * * 4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof." The argument is that the article is an account of the arrest of the plaintiff, together with a statement of someone relative to the proof in support of the charge upon which the arrest was made; that there is nowhere in it a distinct assertion that she was guilty of the charge; that it leads only to the conclusion that such charge was made against her in judicial proceedings; that it is neither alleged nor proved that it was published maliciously, and hence that it falls within the protection of the provision of the statute quoted.

The evidence tends to show that the plaintiff has been a resident of Butte for many years, occupying her own home; that at the time of the publication her three children—two girls, Ruth and Helen, of the ages of fourteen and eleven years, respectively, and a boy, Thomas, of the age of thirteen years—were attending the public school; that she had been divorced from a former husband, the father of the children, and was living with one Miller as his wife, but whether married to him or not does not appear; that Miller did not stay at the family home, but went from place to place as he could find work at his trade, being a painter and decorator; that the plaintiff earned the principal part of the family support by renting rooms, receiving help from Miller in the way of money, from time to time, as he was able to earn it; that the day before the publication of the article Mr. Schoenfeld, a state humane officer, in company with the divorced husband, having taken the children from school, held them in custody until the next day, when, upon a charge of vagrancy and incorrigibility, he procured their commitment as follows: Ruth to the state reform school, Thomas to the state orphans' home, and Helen to the custody of the humane officers; that plaintiff, hav-

ing learned that the children had been taken from school, went to the sheriff's office, where they were being detained for the time being, to secure their release; that at the instance of Mr. Schoenfeld, but without charge preferred by him or anyone else, and without a warrant, she was put in jail, where she was detained for two days and then released; that no charge was ever made against her, either by one of the children or anyone else; that she was not permitted to appear as a witness, or otherwise, at the hearing, which resulted in the commitment of the children; and that subsequently she secured their release and had them at home at the time of the trial. The evidence tended further to show that at no time prior to the action taken by the humane officer was there anything immoral or indecent in the life of plaintiff, except what might be inferred as to her relations with Miller (though what they were does not appear), or that she ever at any time subjected any of the children to any abuse or indignities of any kind, or permitted them to be subjected to wrong, or that they suffered any wrong, at the hands of others. On the contrary, it appears that she was kind and considerate in her conduct toward them and took such care of them as she could. The elder daughter testified that men did not visit her mother or frequent the house, except those who had rooms there, either alone or with their families. She stated that she and her brother and sister had always been treated kindly by her mother; that she had never been assaulted by her mother; that she had never so stated to anyone; that she was not allowed to have boy friends; that she was not permitted to go uptown to places of entertainment in the evening, but was required to be at home; and that she never told any person that her sister had been compelled by her mother to submit to unspeakable indignities, or to any indignities, at the hands of any person. Some of the roomers testified that the plaintiff treated the children kindly, and that, so far as they had observed, she had never used any violence toward any of them.

The reporter who prepared the article testified that the story contained in it was based upon information obtained at the sher-

iff's office; that it was intended to be and was a fair statement of the facts as they were detailed to him, and that he at the time believed them to be as stated by him.   There was no testimony offered to confirm any of the statements contained in the article, except the entry in the minutes of the district court, showing the order of commitment of the children, and the jail register, which purported to show that plaintiff was committed to jail for vagrancy upon the authority of Mr. Schoenfeld.   There was no evidence tending to show that in gathering material for the story the reporter had any conversation with the children, or with anyone who had conversed with them.   No witness testified that plaintiff was guilty of any misconduct at the jail.   There is no evidence as to what occurred, other than that detailed above.

Whatever may be said as to the extent of the privilege extended to publishers of newspapers in reporting judicial or other public official proceedings, the article in question is not, and does not purport to be, such a report.   In fact, it was written prior to the institution of any proceeding in court for any purpose.   The information against the children was filed on February 21, after publication was made.   There was nothing to justify the statement even as to an arrest of plaintiff, other than the high-handed action in the sheriff's office, which resulted in her being thrown in jail on the preceding day.   The story is no more nor less than what it purports to be—a sensational detail of charges of the inhuman and unspeakable crimes by the mother against the children, the material for which was gathered by the reporter, not from any proceeding witnessed by him, but at second-hand from the gossip heard at the sheriff's office.   It is not a fair, true story. If the evidence of the different witnesses is to be accepted as true—and for the purposes of this case it must be so accepted— the least investigation by the reporter would have disclosed to him, not only that the plaintiff was not under arrest upon a nominal charge of assault upon one of her own children, but also that the story behind it, of her horrible brutality and unspeakable indignities to which the other daughter had been compelled by her mother to submit at the hands of men during night-long orgies,

was wholly untrue.  To say nothing of the other features of the story, its reference to unspeakable indignities to which the [4] mother subjected her daughter of tender years, impliedly to administer to the pleasure of her male companions, is in itself sufficient to expose the mother to the hatred and contempt of every right-thinking person.  Under the statute (Rev. Codes, sec. 3602), the statement is libelous *per se,* and the plaintiff was not required to allege and prove special damages.  (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; Odgers on Libel and Slander, p. 53; Newell on Slander and Libel, sec. 17.)  If the writer had merely stated the facts as they actually were, the result would have been an account of the doings of the officers, involving no charge against plaintiff whatever.  Instead of verifying the statements of the officers as made to him by prosecuting an inquiry to ascertain the truth of them, intent upon making a good story, he accepted them without question, thus holding up the plaintiff to the obloquy of every reader as a person to be shunned and avoided by every decent man and woman in the community.  The fact that he believed it to be [5] fair and true, or that the defendant, accepting it as true, published it as a fair and true statement, is no excuse or justification.  It was said by the supreme court of California, in *Gilman* v. *McClatchy,* 111 Cal. 606, 44 Pac. 241, a case similar in its facts to this case: "If A says B is a thief, and C publishes the statement that A said B was a thief, in a certain sense this would be the truth, but not in the sense that the law means.  It would constitute no defense to C; for it would but be a repetition by him of a slanderous charge.  His defense must consist in showing that in fact B was a thief."

The right of free speech is guaranteed by the Constitution.  (Art. III, sec. 10.)  It is there declared that no law shall be enacted impairing it, and that every person shall be free to speak, write, or publish whatever he will on any subject.  At the same time, it leaves the way open by which everyone who abuses his privilege may be brought to account.  The court, in *Gilman* v. *McClatchy, supra,* after discussing at some length the purpose of

this provision, concludes: "As the law stands, pecuniary compensation is all that can be recovered for libel, however damaging it may be. But no one pretends that this compensation reestablishes the injured man or rehabilitates his reputation. The damage done may be, and frequently is, irreparable. In this case, appellants ask for such an extension of the law as would give immunity to publishers of libels, provided express malice in the publication be absent. In other words, their contention resolves itself into this: That a newspaper is a purveyor of news. The people have the right to read the news. Any story gleaned by a reporter as this was gleaned, and published in the ordinary course of newspaper business, without personal malevolence against the victim of the tale, should be held privileged. In support of this contention, there is neither authority, law nor justice. No point of similarity can be found between this case and those which protect a publisher who, in good faith, discusses the habits, qualifications, and official conduct of a person holding a public office, or presenting himself as a candidate therefor. Even in the latter cases, a 'line must be drawn between hostile criticism upon public conduct and the imputation of bad motives or criminal offenses, where such motives or offenses cannot be justly and reasonably inferred from the conduct.' (*Neeb* v. *Hope,* 111 Pa. 145, 2 Atl. 568.) But to extend this doctrine and to seek to apply it, as here, to a charge, infamous in its nature and false in its facts, against a private individual would be to put upon the people a greater evil than that which the Constitution sought to prevent."

Speaking on the same subject, the supreme court of Michigan, in *McAllister* v. *Detroit Free Press Co.,* 76 Mich. 338, 15 Am. St. Rep. 318, 43 N. W. 431, said: "No newspaper has any right to trifle with the reputation of any citizen, or, by carelessness or recklessness, to injure his good name and fame or business. And the reporter of a newspaper has no more right to collect the stories on the street, or even to gather information from policemen or magistrates, out of court, about a citizen, and to his detriment, and publish such stories and information as facts in a newspaper, than has a person, not connected with a newspaper,

to whisper from ear to ear the gossip and scandal of the street. If true, such publication or such speaking may be privileged; but, if false, the newspaper, as well as the citizen, must be responsible to anyone who is wronged and damaged thereby. It is indignity enough for an honest man to be arrested and put in prison for an offense of which he is innocent, and for which indignity ofttimes he has no redress, without being further subjected to the wrong and outrage of a false publication of the circumstances of such an arrest and imprisonment, looking toward his guilt, without remedy. And no sophistry of reasoning and no excuse of the demand of the public for news, or of the peculiarity and magnitude of newspaper work, can avail to alter the law, except, perhaps, by positive statute, which is doubtful, so as to leave a party thus injured without any recompense for a wrong which can even now, as the law stands, never be adequately compensated to one who loves his reputation better than money.'' Within the limits defined by these cases, the publisher is within his rights. He cannot go beyond them without subjecting himself to the penalties of the law.

Counsel argue that the fact that the district court, after the publication, adjudged that the children were dependent and neglected, under the provisions of the statute applicable (Rev. Codes, secs. 7829–7835), is a conclusive reason why the publication was at least a *quasi*-privileged one, and that the burden was upon the plaintiff, not only to show the falsity of some of the statements contained in it, but also that they were known to be false, or, by the exercise of ordinary care, their falsity could have been ascertained by the defendant. As we have already said, the story in its essential particulars was not true. It was [6] libelous *per se*. In such case, the law presumes malice, in the absence of lawful excuse, even though no spite or ill-will is shown. (Rev. Codes, sec. 8327.) On what particular ground the court committed the children does not appear; but at most the fact of their commitment does not, under the circumstances, justify any inference, other than that they were dependent or incorrigible. It furnishes no ground for the conclusion that any

of the published charges against the plaintiff were true; and it was only by proof of their truth that the defendant could justify them.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH: I agree with all that is said by the Chief Justice in the foregoing decision concerning the second question involved; but I am of opinion that the case of *Geneva Cooperage Co.* v. *Brown,* 124 Ky. 16, 124 Am. St. Rep. 388, 98 S. W. 279, was decided on correct principles of law, and that the plaintiff's cause of action in the instant case was barred by the statute of limitations.

Rehearing denied April 1, 1912.