McKenzie v. Boykin.

[71 South. 382.]

1. Elections. *Statutes. Constitutionality. Right to vote. Restrictions. Vote for candidate not nominated.*

Code 1906, section 4160, providing that in case of the death of any candidate whose name shall have been printed on the official ballot, the name of the candidate duly substituted may be written in the blank space by the voter, was a rescript of section 2 of the election ordinance adopted by the constitutional convention of 1890 and is not violative of section 250 of that constitution, which provides that all qualified electors and no others shall be eligible to office.

2. Election. *Right to vote. Restrictions.*

In our government it is not every one upon whom the right to vote is bestowed. Not only is it permissible under both federal and state constitutions to bestow upon some, the right to franchise and to deny it to others, but the legislature of the state has authority without violating any constitutional provision, to make such reasonable regulations with reference to the manner in which elections shall be conducted, and upon what reasonable conditions and under what circumstances a citizen may vote and in what way, as in its discretion it deems proper.

3. Elections. *Statutes. Vote for candidate not nominated.*

Code 1906, section 4160, providing that in the event of the death of any candidate whose name shall have been printed on the official ballot, the name of the candidate duly substituted may be written in the blank space by the voter, when construed in accordance with the maxim *"Expressio unius est exclusio alterius,"* and in view of the provisions of the statute for nominating nonpartisan candidates by petition and of Code 1906, section 4175, making it criminal for a voter to place any identifying mark on his ballot, authorize voters to write on the official ballot the name of a candidate not nominated only in the event of the death of a candidate.

4. Statute. *Construction. Favorable validity.*

To hold that the voter has a right to write the name of his choice on the official ballot in any other case than that provided for in section 4160, Code 1906, would be to render that statute unenforceable and a statute should not receive such a construction as would render any of its provisions vain and useless.

Appeal from the circuit court of Smith county.

Hon. W. H. Hughes, Judge.

Election contest by W. E. McKenzie against N. B. Boykin. From a judgment for contestee, contestant appeals.

The facts are fully stated in the opinion of the court.

*Watkins & Watkins,* for appellant.

*S. L. McLaurin, T. J. Wills* and *Guthrie & Tullos,* for appellee.

Potter, J., delivered the opinion of the court.

This is a contested election suit, instituted by W. E. McKenzie, the appellant, against N. B. Boykin, the appellee, under section 4186, Mississippi Code 1906, by petition in the circuit court of Smith county, to contest the election of appellee, who now holds the office of supervisor of the fifth district of said county, by virtue of a general election held in said county on the 2d day of November, 1915. The appellant alleged in his petition that he was a citizen of said district and county at the time of the general election above mentioned, and that he was eligible to be voted for in said election for the office of member of the board of supervisors of said county from said fifth supervisor's district, by reason of his being a qualified elector of said county, a resident freeholder of said district, and the owner of the requisite real estate; that the official ballot printed and distributed for use in said election had only the name of the appellee printed thereon as the person to be voted for in said election for the aforesaid office of member of the board of supervisors, and that two hundred and seventy-seven of the qualified electors of said county and said district cast their ballots in said election for supervisor, of which number one hundred and eight voted for the appellee by marking an "X" opposite the name of appellee, and that one hundred and forty-two

of the electors wrote on the face of the official ballot the name of appellant for said office and marking an X mark opposite his name, and also twenty-seven voted for appellant by writing his name on the official ballot without putting the X mark opposite thereto; and it was alleged that, exclusive of the twenty-seven who had voted for the appellant by simply placing his name on the ticket, appellant had been elected by a majority of thirty-four votes, counting only those ballots upon which the appellant's name was written and an X mark placed opposite to it. It was further alleged that the local managers who held said election in said district excluded the aforesaid twenty-seven votes, but counted the two hundred and fifty, showing a majority in appellant's favor of thirty-four votes, and that the election commissioners met to declare the result of said election, and rejected all the votes for appellant, and declared appellee elected to said office, and so returned to the secretary of state. To the petition appellee filed two pleas, the plea of general issue and a special plea in bar in confession and avoidance. The special plea set out that appellant and all of the qualified electors who participated in said general election in said district participated and voted in the primary elections in 1915 of the Democratic party, by which party appellee was nominated as the candidate of said party to said office in said general election, and that no other person was nominated in said year by any party as its candidate for said office in said election, and that the name of no other person than appellee was printed on said ballot as a candidiate for said office, and that there was no death of any candidate for said office in said general election. To this special plea appellant demurred on the ground that it set forth no legal defense, and showed that appellant was eligible to be voted for in said election for said office.

The question to be determined in this case is whether or not an elector in a general election can vote for any

person for office other than one whose name is printed
on the official ballot, by writing thereon the name of
his choice for the office, except in case of the death of a
candidate.   It is urged that, unless qualified electors
are permitted to write the name of their choice on the
official ballot and put the X mark opposite same to indi-
cate their choice, the provisions of section 250 of the
Constitution of 1890 would be violated.   Section 250 is
as follows:

"All qualified electors and no others, shall be eligible
to office, except as otherwise provided in this Constitu-
tion."

The present election laws are practically rescripts of
the election ordinance of the constitutional convention
of 1890.   The election ordinance was to be in force until
1896, and thereafter the legislature had the power to
enact laws not violative of the Constitutions of the state
and the United States with reference to the holding of
elections.   The election ordinance was adopted by the
convention itself, and it would not be contended, there-
fore, that it is violative of the state Constitution, and it
is not contended that this ordinance in any way violates
the Constitution of the United States.   The validity of
the franchise laws of the Constitution of 1890 was vig-
orously assailed as being unconstitutional in both the
United States Senate and the supreme court of the
United States.   The enactment of the franchise sec-
tions of the Constitution of this state by that conven-
tion, and the defense of them by the late Senator James
Z. George, and the final adjudication of the supreme
court of the United States upholding said franchise
laws, mark an epoch in the history of our state—in fact,
of the entire South.   The genius of Senator George in
conceiving the franchise sections of our Constitution,
eliminating the ignorant and vicious from the exercise
of the franchise, has thus been vindicated, and our state
restored for all time to come to the control of a capable
and intelligent electorate.

The purpose of the election ordinance was to carry out and enforce the franchise sections of the Constitution, the machinery whereby the franchise laws of the Constitution were put into operation. The sections of the Code involved in the case at bar, being practically rescripts of the election ordinance, take its place, and the election ordinance itself was violative of no constitutional provision; likewise the statutes in question do not violate any constitutional provision.

As stated by counsel on both sides in their oral argument of this case, the right of Mr. Boykin or Mr. McKenzie to hold the office of member of the board of supervisors of the fifth supervisor's district of Smith county is only an incidental question in this case; a greater question to be determined is the proper construction of the laws dealing with the right of franchise of our citizens.

In our government it is not every one upon whom the right to vote is bestowed. For instance, under our laws one-half the population are excluded from the right to exercise the ballot because of sex; no male person is permitted to vote until he has reached the age of discretion, fixed by our law at twenty-one years of age. Not only is it permissible under both federal and state Constitutions to bestow upon some the right of franchise and to deny it to others, but the legislature of the state has the authority, beyond question, without violating any constitutional provision, to make such reasonable regulations with reference to the manner in which elections shall be conducted, and upon what reasonable conditions and under what circumstances a citizen may vote, and in what way, as in its discretion it deems proper.

Section 4160, Code 1906, itself a rescript of a portion of election ordinance, section 2, expressly provides that:

"One blank space under the title of each office to be voted for, and in the event of the death of any candi-

date whose name shall have been printed on the official ballot, the name of the candidate duly substituted in the place of such deceased candidate, may be written in such blank space by the voter."

Applying the rule of construction, "*Expressio unius est exclusio alterius*," we conclude that the section means th'at this space can be used only in case some candidate dies and another be substituted in his place. By necessary implication, the statute negatives the right of the voter in any case to write the name of a candidate upon the official ballot and vote for him except in case of death. To hold otherwise would, in effect, destroy the secrecy of the ballot, and put the timid voter at the mercy of those who might coerce him, and put the corrupt voter within the easy grasp of the bribe giver; for, as illustrated, the voter could easily agree beforehand that he could write the name of some particular person on the ballot for any particular office, and the man who has the power to coerce him, or the man who bought his vote, would know whether or not the ballot had been cast according to his behest. The law provides a simple expedient whereby the names of candidates who are not party nominees may be placed upon the ticket in district offices by requiring a petition to be signed in the case of election of beat officers by only fifteen qualified electors. This restriction is placed upon the electors in order that the Australian ballot may be preserved in its integrity.

It is urged, however, in the argument of counsel that if the legislature required the names of fifteen electors to have printed the name of a no-party candidate upon the ticket, for member of the board of supervisors, *a fortiori*, the number could be increased by the legislature to such an extent that elections would be placed entirely in the hands of political parties, and that the right of the voter to vote for whom he pleases, and the right of the nonpartisan to run for office, would be denied. The answer to all this is that the legislature has

not done that, but that the restriction provided is a reasonable restriction, and one that does not arbitrarily restrict the voter's right of choice, and is therefore constitutional. It would be an entirely different question if the restrictions placed upon the voter were unreasonable, and were such as to practically deny him the exercise of his legitimate choice.

The appellant in this case insists that in the case of *Mayor* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213, and *State* v. *Ratliff et al.,* 66 So. 538, this court found, as a matter of law, that the voter had the right to write the name of a candidate other than a party nominee on the official ballot and vote for him.

In the case of *City of Jackson* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213, a different statute and a different question entirely is presented. No official ballot is provided for in the act, and in that case and the statute under consideration did not provide for any other method of placing names on the ballot than through party nominations, and, not having provided for any other method than party nominations, the voter retained undoubtedly the right to write the name of his choice upon the ballot, for the voter has a constitutional right to express his choice, and if no other reasonable method is provided by law, he has the right to write the name of his choice on the ballot.

In the case of the *State* v. *Ratliff,* 66 So. 538, Timberlake was the nominee of the Democratic party, and the election commissioners failed to print his name on the ticket. The right of the electors to vote for him could not be denied by the failure of the election commissioners to place his name on the ballot—that was all really involved in that case.

Section 4175, Code of 1906, makes it a criminal offense for a voter to "place any mark upon his ballot by which it can afterwards be identified as the one voted by him." This provision is constitutional, having been

a part of the election ordinance of the constitutional convention of 1890.

"A statute should not receive such a construction as would render any of its provisions vain and useless." *Martin* v. *O'Brien,* 34 Miss. 21; *Swann* v. *Buck,* 40 Miss. 268; *Adams* v. *Y. & M. V. R. R. Co.,* 75 Miss. 275, 22 So. 824.

To hold that the voter has a right to write the name of his choice on the ballot would render this section absolutely unenforceable. We are therefore of the opinion that the ballots upon which appellant McKenzie's name was written were illegal, and were properly excluded by the election commissioners of Smith county in certifying the returns in said election to the secretary of state.

*Affirmed.*

Smith, C. J. (specially concurring). I am in thorough accord with the views expressed in the opinion in chief, except with its attempt to distinguish the present case from the case of *Mayor, etc.,* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213, and the later case of *State* v. *Ratliff,* 63 So. 538, decided upon the authority thereof without any further discussion of the question here and there involved. These cases, in so far as the point here under consideration is concerned, are squarely in conflict with the views expressed in the opinion in chief, were wrongly decided, are by the opinion in chief necessarily, and, in my judgment, in order that they may no longer mislead, should be expressly, overruled. An examination of these cases will disclose that the questions there presented to the court were not those set out in the opinion in chief, but were the identical questions involved in the case at bar.

In the brief of counsel for appellee it is stated that that portion of the opinion in the case of *State* v. *Ratliff,* dealing with the question here under consideration was *obiter dicta* for the reason that Bailey did not join

in the appeal. It is true that from the report of the case, contained in 66 Southern Reporter, it appears that Bailey did not appeal, but this is in error. He did appeal, the record thereof being separate from the record containing the state's appeal, but all of the cases were argued at the same time, no briefs whatever being submitted with Bailey's record.