MISSOULA PUBLIC SERVICE CO., Respondent, *v.* BITTER ROOT IRRIGATION DISTRICT, Appellant.

(No. 6,140.)

(Submitted June 8, 1927. Decided July 7, 1927.)

[257 Pac. 1038.]

*Injunction—Public Nuisances—Pollution of City Water Supply by Irrigation Ditches—Evidence—Sufficiency—Equity—Appeal—Findings—When Conclusive.*

Equity—Appeal—Findings, When Conclusive.
  1.  On appeal in an equity case the findings of the district court will not be disturbed unless the evidence preponderates decidedly against them.

Nuisances—Irrigation Ditches—Polluting City Water Supply—Injunction—Evidence—Sufficiency.
  2.  Evidence in an action to enjoin an irrigation district whose canal crossed a creek. which was the source of supply for plaintiff's plant furnishing the inhabitants of a city with water for domestic purposes, from releasing muddy canal waters into the channel of the creek, thus polluting the otherwise pure and wholesome water flowing therein to such extent as to render plaintiff's filtration plant virtually ineffectual and endanger the health of the city's inhabitants, *held* sufficient to warrant the judgment of the court that defendant's acts constituted a public nuisance and enjoining their continuance.

Same—Right of Appropriator of Water to Turn Surplus Water into Stream Other Than One from Which He Takes It—Proviso.
  3.  While section 7096, Revised Codes 1921, authorizes an appropriator to turn water into the channel of a stream other than the one from which he appropriates, he may do so only if the waters in the stream the channel of which he thus uses are not deteriorated in quality to the detriment of a prior appropriator thereof.

Same—Pollution of City Water Supply by Irrigation Ditches—What not Defense Against Issuance of Injunction.
  4.  Defendant irrigation district having by its act endangered the health of the inhabitants of the city by polluting its water supply was not in position to complain that if the judgment enjoining it from releasing its canal waters into the stream from which that supply was obtained be enforced it would be compelled at a· large expense to provide another escape for the canal waters, whereas if the plaintiff company would enlarge its water plant the ob-

1.  See 2 R. C. L. 203.
3.  See 27 R. C. L. 1278.
4.  See 27 R. C. L. 1232.

jectionable feature of its act would be obviated; having been alone responsible for the situation created, it alone must bear its burden.

---

[1]   Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.
[2]   Waters, 40 Cyc., p. 768, n. 26.
[3]   Waters, 40 Cyc., p. 768, n. 26, 27.
[4]   Waters, 40 Cyc., p. 767, n. 23, p. 768, n. 26.

*Appeal from District Court, Ravalli County; James M. Self, Judge.*

ACTION by the Missoula Public Service Company against the Bitter Root Irrigation District. Judgment for plaintiff and defendant appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Harry H. Parsons,* for Appellant.

*Mr. W. H. Bickford* and *Mr. Fred J. Furman,* for Respondent.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, Missoula Public Service Company, is the owner and operator of a water system with which it supplies the people of the city of Hamilton with water for domestic use. The source of supply is Skalkaho Creek. The normal flow of this creek, after the subsidence of high water, is, approximately, from 200 to 400 inches. The daily consumption of water in the city of Hamilton is a million and a half gallons. The plaintiff, in order to supply pure water to the municipality, has constructed and maintains upon Skalkaho Creek a dam by means of which water is impounded in two compartments. During periods of high water, when constant pressure can be maintained, the supply is impounded in one compartment of the dam and is forced by filtration from the bottom thereof to the other compartment from which

the water is conducted through a plant where it is treated with liquid chlorine. In low-water season filtration is not necessary because the water then flowing in the Skalkaho is clear and treatment by the chlorination process is efficacious.

The defendant, Bitter Root Irrigation District, is the owner and operator of a canal about seventy miles in length, by means of which it furnishes water for the irrigation of approximately 25,000 acres of land, as well as for domestic use. The defendant takes its water from Lake Como, a large mountain lake. The capacity of the canal is 300 second-feet of water and the average flow in the canal is approximately 250 second-feet.

At a point about fourteen miles from its source and about one mile above plaintiff's plant the canal crosses Skalkaho Creek through an inverted siphon, which is equipped with flood gates so the canal may be completely drained into Skalkaho Creek at the pleasure of the defendant. At Burnt Fork, approximately fifty miles from the head of the canal, another spillway is provided. In case of a break in the canal below Skalkaho Creek it is the practice of the defendant to turn all of the water then flowing in the canal into Skalkaho Creek until the break is repaired. Usually, when the water is turned into Skalkaho Creek the flow is continued for from twelve to fifteen hours.

The plaintiff brought this action to procure an injunction for the purpose of restraining the defendant from releasing the waters of the canal into the channel of Skalkaho Creek. Among other allegations plaintiff alleges that the waters of the canal are more turbid than are the waters of Skalkaho Creek, and the canal water carries more solid matter in suspension and in solution than do the waters of Skalkaho Creek; that as the canal and the inverted siphon are constructed and operated beneath and across Skalkaho Creek, great quantities of debris, refuse and filth are collected, emptied and deposited by the defendant into Skalkaho Creek,

thus becoming commingled with the otherwise pure and wholesome water then flowing in the creek, with the result that the defendant thereby contaminates and pollutes the waters of Skalkaho Creek then being used by the plaintiff for supplying the inhabitants of Hamilton with water.

There was substantial testimony introduced by the plaintiff showing that the waters flowing in the canal are more turbid than are the waters of Skalkaho Creek and that when the waters of the canal are released into the creek the large quantity thereof, approximately 10,000 inches, causes the entire stream of water flowing in the creek to become muddy. The water carries sand, gravel and mud in its course and it remains roily for hours. There was substantial testimony to the effect that when the water is roily there is danger that disease bacteria may escape the killing force of the disinfectant. The testimony indicates that the water flowing in Skalkaho Creek before the waters of the canal are released therein is subject to contamination and requires treatment by the chlorination process. In other words, when the water is muddy or roily, the danger of disease therefrom is considerably increased.

The court found that when the large volume of water in the canal is turned into Skalkaho Creek by the defendant it becomes turbid, roily and muddy and contains large quantities of foreign matter, with the result that the chlorination and filtration plant of the plaintiff becomes and is ineffective and is damaged, and the water of the Skalkaho Creek is polluted and rendered unfit for human consumption, and sand, gravel and other foreign matter is conveyed into plaintiff's reservoir and the filtration and chlorination plants are rendered unfit for their purposes. The court also found that the deliberate and intentional releasing of large quantities of water into Skalkaho Creek above the intake at plaintiff's plant renders the waters of the creek turbid, roily and muddy, making it chemically impossible for plaintiff's chlorinization

plant to purify the water to be delivered to the inhabitants of the city for human consumption. The court therefore decided that the acts of the defendant constitute a public nuisance and by its decree enjoined the defendant from polluting the waters of Skalkaho Creek above the intake and water system of the plaintiff; from flooding the reservoir and property of the plaintiff; from doing any act or thing rendering inoperative or ineffective the chlorinization or filtration plants of the plaintiff; from doing any act or thing preventing the proper and effective chlorinization, filtration and purification of the waters of Skalkaho Creek, and from doing anything which interferes with the business of the plaintiff in supplying the inhabitants of Hamilton and its vicinity with pure and wholesome water. From the judgment the defendant has appealed.

After a thorough examination of the evidence, and due consideration for the arguments advanced in the briefs of defendant's able counsel, we may well rest the decision of [1] this appeal upon the oft-repeated rule that in equity cases this court will not disturb the findings of the trial court unless the evidence preponderates decidedly against them.

The plaintiff's predecessor in interest was the prior ap- [2] propriator. It was enjoying the use of the waters of Skalkaho Creek and its purification plant when defendant came upon the scene, and without molestation from anyone so far as the record discloses. The defendant constructed its canal across the channel of Skalkaho Creek, placed therein the inverted siphon and the spillway. At its pleasure, though infrequently, it discharged into Skalkaho Creek, then carrying a small quantity of water—from 200 to 400 inches— 10,000 inches. This large volume of water, turbid in comparison with the waters of Skalkaho, rising high above the normal surface of the stream and reaching beyond the channel followed by the stream in normal flow, gathered sand, sediment, leaves and debris along the banks of the stream which

it swept along in its course to plaintiff's plant. The exhaust from the canal usually continues twelve to fifteen hours. When the water runs low in the canal, the bottom of which is composed of soil, mud and silt are carried into the creek. As a consequence the water in plaintiff's plant is roily for many hours, sometimes twenty-four.

Defendant insists that it has a right to discharge the waters [3] from the canal into the creek when, and as often as, it pleases. The argument is made that the water it deposits never reaches the high-water mark of the stream, and it has the right to use the channel unless it exceeds that capacity. It is true that the statute, section 7096, Revised Codes 1921, recognizes the right of an appropriator to use the channel of a stream other than the one from which he appropriates, but it is required specifically that in making use of the channel the water in the stream theretofore appropriated by another shall not be deteriorated in quality. In the case before us the Latin maxim expressed in our statute "one must so use his own rights as not to infringe on the rights of another" (sec. 8743, Rev. Codes 1921) applies with all its force.

The facts in the case at bar do not permit the application of the doctrine of comparative injury.

It is argued that the plaintiff should enlarge and recon- [4] struct its plant so that high water, freshets, cloudbursts, and the like, will not affect the product released therefrom, so that in any event the plaintiff will be able to furnish pure water to the public, and, that being accomplished, the water released by the defendant could be taken care of without difficulty; and that if defendant is compelled to provide an escape for the water it releases so that the plaintiff will not be interfered with, the defendant will be put to an expense of many thousands of dollars. A sufficient answer is that the defendant has brought about the situation which obtains when it releases the waters from the canal into the creek

and it must bear the burden of the situation it has itself created. It may not shift the burden to the plaintiff which has done nothing to bring about the situation. To hold otherwise would be tantamount to confirming in the defendant the right to release its waters weekly or daily or even indefinitely, regardless of the damage done to the plaintiff, and in view of the fact that the water flowing in Skalkaho Creek requires chlorination, in ruthless disregard of the health of the inhabitants of the city of Hamilton. That the public be furnished with water fit for human consumption is an absolute necessity; the duty resting upon the plaintiff to furnish pure water to the inhabitants of the city of Hamilton is unconditional and imperative.

The evidence sustains the finding that the water released into Skalkaho Creek by the defendant seriously deteriorates the water flowing to plaintiff's plant, amounts to a public nuisance and warrants the decree entered.

The judgment is affirmed.

*Affirmed.*

Associate Justices Myers, Stark, Matthews and Galen concur.