13 N.J. Super. 483 (1951)
80 A.2d 586
ELWOOD M. BARRON, PLAINTIFF,
v.
FLORENCE S. GREEN, MUNICIPAL CLERK OF THE BOROUGH OF AVALON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 19, 1951.
*484 Miss Florence E. Josephson, attorney for plaintiff.
Mr. Robert K. Bell (Mr. Albert M. Ash appearing), attorney for the defendant.
WOODS, A.J.S.C.
Plaintiff, Elwood M. Barron, a resident of Avalon, New Jersey, asserts that he filed his petitions nominating him for the office of borough commissioner of the borough of Avalon to be voted upon May 8, 1951, with Florence S. Green, municipal clerk of the borough of Avalon on March 29, 1951; that his petitions, acceptance, oath of allegiance as filed were in all respects in good and proper order; that the same were received and later rejected as having been filed out of time contrary to the statute in such case made and provided. He further alleges that after filing same with *485 the municipal clerk, he was notified by letter to appear at the borough hall at 12:30 p.m., Thursday, April 5, 1951, for the purpose of drawing for places on the ballot; that later he was advised by the defendant that his name would not appear on the ballot as a candidate for the office of borough commissioner and that he should not appear for the drawing as noticed for the reason that his petitions had been filed on a date later than in the statute made and provided; that he, notwithstanding, appeared at the borough hall at 12:30 p.m., April 5, 1951, and demanded that his name be placed in the box for drawing for a place on the ballot, but his demand was refused by the defendant.
The statute brought to determine the question under consideration is R.S. 40:75-3, the pertinent part of which reads as follows: "The names of the candidates for commissioners shall be filed with the municipal clerk * * * at least twenty days prior to an election for the first members of the commission and at least forty days prior to any other municipal election."
In this instance we focus the requirement on that part reading "at least forty days prior to" the municipal election to be held May 8, 1951.
Was the filing of the petitions by the plaintiff, Barron, on March 29, 1951, in time?
The question was argued on a rule to show cause before the court at Woodbury, New Jersey, on the return day, April 13, 1951. The court read the complaint and supporting affidavits on the motion requesting that the court give judgment that (a) the petitions were filed in time; (b) that the defendant be directed duly to receive and file the petitions of the plaintiff; (c) that the defendant be directed to hold a drawing for places on the ballot accordingly.
The phrases "at least" and "prior to" must be defined in their accepted meanings. "At least" is an adverbial phrase meaning at the lowest estimate; at the smallest concession or claim; in the smallest or lowest degree; at the smallest number; and sometimes used in the sense of clearly. It is a phrase *486 of emphasis, expressive of a minimum, and implies the possibility of more. Sometimes it imports uncertainty, taking its meaning from the context, and hence, under particular circumstances, has been held equivalent to "at most," "at the least," "fully," "not less than," and "not to exceed." 7 C.J.S. 165.
In the case of State (Stroud, Prosecutor) v. Consumers' Water Co., 56 N.J.L. 422 (Sup. Ct. 1894), the legality of an ordinance was challenged. One of the challenges brought up the provision of the statute dealing with a special election held in Atlantic City on June 30, 1892, in respect to the acceptance of the provisions of "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," and the supplements thereto. "The point made under this head is that the statutory notice of the special election held to obtain the sentiment of a majority of the legal electors of Atlantic City was not given,  that the notice which was given was only a five days' instead of a six days' notice." The court went on to say:
"The statute (Rev., p. 725, § 52) requires notices of the special election to be set up and published at least six days previous to the day of election. The notices were given June 24th, and the election was held June 30th.
By excluding one and including the other of these days in the computation, it appears that six days' notice was given.
This method of computation is the mode adopted in this state unless the requirement is that the days shall be entire days. Den v. Fen, 3 Halst. 303; State, Ackerson v. North Bergen, 10 Vroom 694, 695; McCulloch v. Hopper, 18 Id. 189.
Nor do the words `at least six days' imply more than that six days' notice shall be given."
The former Justice's Court Act required that all summons should be served at least five days before the time of appearance. Under this act the true mode was to exclude either the day of service or of the appearance, and to include the other. Day v. Hall, 12 N.J.L. 203 (Sup. Ct. 1831).
The court finally said on this point, Reed, J., speaking for the same:
*487 "Whatever differences of view, in respect to the force which should be given to the words `at least,' may exist elsewhere, it is settled here that they do not change the requirement of a certain number of days' notice into a requirement that the days shall be entire. The notice was sufficient."
In the case of Den ex dem Bray v. Fen, Nancy Drake, 8 N.J.L. 303 (Sup. Ct. 1826), the court remarked: "Where a statute requires service for a fixed number of days, the mode of computation is to include the day of service or the appearance, and to exclude the other; but where a number of entire days are required, both the day of service and the day of appearance are to be excluded."
In the case of State, Ackerson v. North Bergen, due notice of a meeting of the township committee was called into question. The charter required ten days' notice. Said the court, Dalrimple, J., speaking:
"The construction is, that notice given on the 25th day of August, of a meeting on the 4th day of September then next, was not a notice of ten days. I think it was according to the recognized method of computation in such cases. State v. Jackson, 1 South. 323; Den v. Fen, 3 Halst. 303; Gillespie v. White, 16 Johns. 117; Vandenburgh v. VanRensselaer, 6 Paige 147."
In the case of Introcaso v. Burke, 3 N.J. Super. 276, 65 A.2d 786 (Law Div. 1949), Judge William J. Brennan delivered the opinion and inferentially made the point when he stated:
"Plaintiff, prior to March 31, 1949, filed with the City Clerk of the City of Jersey City the requisite number of signed petitions nominating him as a candidate for the office of commissioner of said city in the municipal election to be held Tuesday, May 10, 1949. The date after which petitions for this purpose could not be accepted was March 31, 1949."
In the case of Berry v. Gates, 129 N.J.L. 1, 28 A.2d 59 (Sup. Ct. 1942), on application of John J. Berry and others against Russell C. Gates, county clerk of the county of Essex, for writ of mandamus or, in the alternative, for writ of certiorari, the relief prayed for was denied. In this case the *488 facts disclosed that the petition was addressed to the county clerk signed by the requisite number of qualified voters and was filed in his office on August 6, 1942. This petition set forth the names and address of 12 persons desiring to run for nomination as members of the General Assembly, etc. Two days thereafter, on August 8, the 16 persons named in the petition signed a paper declining the nomination and requesting that their names be not printed on the Republican ballot for the primary election to be held on September 15, 1942. This declination was filed in the office of the county clerk on August 10. On August 12, three persons named in the petition as "committee on vacancies" filed a completely new slate. This instrument was filed on August 12 and was defective in several respects. On or before August 17 a certificate of acceptance, amended and supplemental certificate of nomination and affidavit of the three members of the committee on vacancies were filed, which, if effective, would appear to have corrected all prior irregularities and defects in the proceedings. A determination as to the efficacy of the attempted amendments was called for. The court then went on to quote the broad powers of amendment in the General Election Law, as well as the provisions in so far as they affected the Primary Election Law. Significantly, in the next to the last paragraph of the opinion, the court stated, Colie speaking: "Under the situation here presented, August 12th was the thirty-fourth day prior to the primary election and the proceedings judged as of that day, disclosed defects which justified the exclusion of the names of the aspirants from the ballot."
In the case before us, the plaintiff filed his petitions on the 29th day of March, 1951, which was the fortieth day prior to the special election fixed as May 8, 1951.
The last brief filed by counsel in this cause was received on Thursday morning, April 19, 1951. Both memoranda of law set forth arguments with respect to the meaning of the phrase "at least 40 days prior to." Counsel for the defendant, in meeting the plaintiff's argument, counters by saying that if the intent and meaning was to refer to the fortieth day as a *489 filing day, the Legislature would have provided as it did in N.J.S.A. 19:31-7 which provides, inter alia, that municipal clerks shall "be empowered to register * * * up to and including the fortieth day preceding any election * * *." As argued, however, by plaintiff's counsel, the language of the New Jersey statutes varies in several instances. The Election Act, Title 19, has several references which may be noted. N.J.S.A. 19:31-7 refers to the last day a voter may register to vote and the language of the statute is "up to and including the fortieth day preceding any election." Relative to the change of residence, note R.S. 19:31-11. The statute declares "on or before the fortieth day preceding any election." The significant meaning of both these phrases would nominate the date as March 8 on a primary day fixed as April 17. Another section of the Election Act, to wit: N.J.S.A. 19:23-14, providing the time for filing petitions nominating candidates for the primary election, runs in this language: "at least forty days prior to." And to our way of thinking, this language has the same force in construction.
It is to be observed further that "statutes are varied in their phraseology, and the decisions as to computation of time vary accordingly. It may be said, however, that the number of days is ordinarily computed by counting the consecutive days backward from the date of the election, and that of a specified number usually the first day is to be included and the last day excluded." 18 Am. Jur. 262, sec. 130.
Strikingly, there is a difference between the phrase "at least 40 days prior to" and the phrase "prior to 40 days before election." The one definitely means the fortieth day before and the other means 40 entire days shall intervene between the election and the filing day.
For the purpose of determination of the issue in this cause, counsel for the defendant concedes that the only question is: Whether the plaintiff by filing his petitions on March 29, 1951, was in time? In view of the authorities cited, we must conclude that the plaintiff, having filed his petitions in due form on the fortieth day before May 8, 1951, is entitled *490 to have his name placed on the ballot and is further entitled to draw for position on the same in accordance with the statute. An order directing the same will be entered accordingly.