STATE OF MONTANA, EX REL. RICHARD W. BURNS, WILLIAM S. KING AND ALICE D. RYNIKER, RELATORS AND RESPONDENTS, v. EDWARD LACKLEN, AS CLERK OF SCHOOL DISTRICT NO. 2, OF YELLOWSTONE COUNTY, MONTANA, AND STERLING M. WOOD, GRANT BOORMAN, HAROLD FRASER, FRED HOFFMAN, EARL E. TIFFANY, FLOYD THOMPSON AND VERLIN E. COX, AS TRUSTEES OF SCHOOL DISTRICT NO. 2, OF YELLOWSTONE COUNTY, MONTANA, AND CONSTITUTING AS A WHOLE, THE BOARD OF TRUSTEES FOR SAID DISTRICT, RESPONDENTS AND APPELLANTS.

No. 9419.

Submitted May 16, 1955. Decided June 13, 1955.

284 Pac. (2d) 998.

244

Ralph J. Anderson and Stanley P. Sorenson, Helena, for appellants.

William G. Mouat and Lee Overfelt, Billings, for respondent.

Mr. Anderson and Mr. Mouat argued orally.

THE HON. JACK R. LOUCKS, District Judge, sitting for Mr. Justice Davis who deemed himself disqualified.

This is an appeal from a judgment of the district court of Yellowstone County, wherein the relators below sought and obtained a peremptory writ of prohibition. Involved is the construction of R. C. M. 1947, section 75-1606, relating to the nomination and election of school trustees and sections 90-401 and 90-407, prescribing the statutory rules for computing time.

The facts are undisputed and are these:

In the spring of 1954 the terms of three of the seven school trustees of district No. 2 in Yellowstone County were to expire and candidates for the offices were to be nominated. Public school district No. 2 in Yellowstone County is a district of the first class.

The law of this jurisdiction requires that an annual election of school trustees be held in each school district in the state on the first Saturday of April of each year. R. C. M. 1947, section 75-1603. The first Saturday of April in the year 1954 was April 3rd and thus the day of election was April 3, 1954.

Under our statutes in districts of the first class no person shall be voted for or elected as trustee unless he has been nominated therefor at a bona fide public meeting, held in the district not more than sixty days nor less than forty days before the day of election. R. C. M. 1947, section 75-1606.

The transcript on appeal reveals that three bona fide meetings were called and held in public school district No. 2 of Yellowstone County, said meetings being called pursuant to call and notice previously given to the general public. The meetings were held for the purpose of nominating candidates for the office of school trustee of the district at the annual election of April 3, 1954. Each meeting was attended by twenty or more qualified electors.

The *first* of such public meetings was held on the evening of February 9, 1954, in the Junior High School Auditorium located in district No. 2, at which meeting Richard W. Burns, Wil-

liam S. King and Alice D. Ryniker were nominated as candidates for school trustees in the district and on February 18, 1954, the names of such three nominees were duly certified to the clerk of the district by certificate that day presented and filed.

The *second* public meeting was held at 7:45 o'clock p.m. on February 22, 1954, in the Northern Hotel in Billings, located in district No. 2, at which meeting Sterling M. Wood, M. R. Colberg and Earl E. Tiffany were nominated as candidates for school trustees in the district and on February 24, 1954, the names of such last mentioned three nominees were duly certified to the clerk of the district by certificate that day presented and filed.

The *third* public meeting was held at 8:00 o'clock p.m. on February 22, 1954, in the Junior High School Auditorium in district No. 2 at which Sterling M. Wood, M. R. Colberg and Earl E. Tiffany were nominated as candidates for school trustees in the district and on the same date, namely February 22, 1954, the names of such last three nominees were duly certified to the clerk of the district by certificate that day made, presented and filed.

The public nominating meeting of February 9, 1954, was held 53 days *before the day of election* (April 3, 1954). Thus was the first public nominating meeting held "not more than sixty (60) days nor less than forty (40) days before the day of election" as is prescribed by section 75-1606, supra.

To prohibit the calling or holding of any election whatever in 1954 for the purpose of selecting school trustees of district No. 2 or the placing of the names of the nominees of the nominating meetings of February 22, 1954, on any ballot and to compel the immediate certification of their own election as trustees of the district, the relators, Richard W. Burns, William S. King and Alice D. Ryniker, being the three nominees of the first nominating meeting, commenced in the district court of Yellowstone County this action against the board of trustees of school district No. 2 and the clerk of such district asserting that the second and third nominating meetings of February 22,

1954, and the nominations there made and certified are void under the provisions of R. C. M. 1947, section 75-1606, claiming that such meetings were held less than forty days before the day of election.

The second and third sentences of R. C. M. 1947, section 75-1606, read:

"The nomination and election of any person shall be void, unless he was nominated at a meeting as above provided * * * and his nomination certified and filed as aforesaid * * *. In the event there be held only one (1) such public meeting, and only one (1) candidate be nominated for each term to be filled then and in that event no election need be held and the clerk of such district shall certify such facts to the board of trustees of the district, acting as a board of canvassers who shall thereupon certify the election of such persons to the county superintendent of schools."

On March 11, 1954, the district court issued an alternative writ of prohibition directing the board of trustees of the district and the clerk thereof to desist from doing or performing any of the acts complained of and directing that such board and clerk show cause on a day certain why such writ should not be made permanent.

The board and the clerk interposed a motion to quash the writ and dismiss relators' affidavit and application for a writ, which motion was based upon the records and files in the proceeding and made on the grounds, *inter alia,* that the facts set forth in relators' affidavit and application are insufficient to authorize the issuance of the writ. Upon the disallowance of their motion the board and its clerk made return and answer to the writ alleging, *inter alia,* that R. C. M. 1947, section 75-1606, is invalid and violative of the State Constitution for the reasons set forth in the above motion.

A hearing was had and on March 15, 1954, the district court made and filed written findings of fact and conclusions of law which were incorporated in its judgment that day made and entered, which judgment ordered that a peremptory writ of pro-

hibition issue against the board and clerk of the school district commanding: (1) That they desist from calling, noticing and holding an election on April 3, 1954, for the purpose of selecting school trustees; (2) that they refrain from placing the names of Wood, Colberg and Tiffany on any ballot provided for the election of school trustees for such school district; (3) that they withdraw and cancel the certificates of the said Wood, Colberg and Tiffany as regularly nominated candidates for trustees of such school district; (4) that the clerk desist from certifying to the board of school trustees any names as candidates for school trustee other than the names of the relators, Burns, King and Ryniker; (5) that the clerk certify to the board of trustees of the district acting as a board of canvassers (a) that only one legal public meeting was held within the time required by law, (b) that only the three relators, Richard W. Burns, William S. King and Alice D. Ryniker have been nominated at such meeting for the offices to be filled (6) and further commanding the board of school trustees under such certification to proceed as provided in section 75-1606 in the matter of the election of trustees for the district.

This is an appeal by the clerk and the board of school trustees of the school district from the judgment so entered against them.

In its finding of fact No. 7 the district court found ''that the meetings held at the Northern Hotel and the Junior High School Auditorium on the 22nd day of February, 1954, hereinbefore mentioned, were and each of them was held less than forty (40) days before the day of election in said School District.''

This finding presents the question determinative of this appeal, namely:

Were the public nominating meetings held February 22, 1954, in time?

This presents a simple problem in simple arithmetic. Its correct solution supplies the answer to this law suit.

''Time is computed according to the Gregorian or new style; and the first of January in every year passed since seventeen hundred and fifty-two, or to come, *must be reckoned* as the first

day of the year.'' R. C. M. 1947, section 90-401. Emphasis supplied.

Under the above section of the Revised Codes of Montana of 1947, Friday, the first day of January 1954 ''must be reckoned as the first day of the year'' 1954 and each succeeding day thereafter had its own separate number to and including, Friday, December 31, 1954, which was the last, or 365th day, of the year 1954.

A day is a division of time or a unit of measuring it. 25 C. J. ▮ S., Day, page 1006.

The law provides: ''Fractions of a day are to be disregarded in computations which include more than one (1) day and involve no questions of priority.'' R. C. M. 1947, section 19-103, subd. 4. See Kelly v. Independent Pub. Co., 45 Mont. 127, 133, 122 Pac. 735, 38 L. R. A., N. S., 1160, Ann. Cas. 1913 D, 1063.

The computations here include more than one day and involve ▮ no questions of priority, hence the above quoted provisions of the concluding sentence of subdivision 4 of section 19-103 apply.

Saturday, April 3, 1954, *''the day of election''*, section 75-1606, was the 93rd day of the year 1954 and Monday, February 22, 1954, being the day on which both the second and third public nominating meetings were held was the 53rd day of the year 1954. Consult the 1954 Lawyers Calendar supplied gratis to the bench and bar of this state by Bancroft-Whitney Company, law book publishers, whereon each day of the year is numbered from the first of January which was the 1st day of the year to the thirty-first of December which was the 365th day of the year. Subtraction shows: 93 minus 53 is 40. Thus the nominating meetings had on the 53rd day of year were held precisely ''forty (40) days before the day of election'' which election day fell on the 93rd day of the year.

The *act* which the *law* provides be done on a day certain is the holding of the annual election of school trustees, section 75-1603, while the *act* which the law provides shall be done on a day ''not * * * less than forty (40) days before the day of election'' is

the holding of a public caucus or nominating meeting. Section 75-1606.

How must the time from the day of election April 3, 1954, to the day of the nominating meetings held on February 22, 1954, be computed?

*General Rule.* In computing a designated number of days for the purpose of ascertaining the last day on which *an act* may be done the general rule is to *exclude* the first terminal day and to *include* the last. 86 C. J. S., Time, section 13(1), page 848.

*Common-law Rule.* "The general rule is that the time within which *an act* is to be done is to be computed by *excluding* the first day and *including* the last, that is, the day on which *the act* is to be done; and in many jurisdictions this rule has been adopted by statutes which have been held to be merely declaratory of the existing common-law rule." 86 C. J. S., Time, section 13(1), page 849, notes 66 and 67. Emphasis supplied.

*Statutory Rule.* In 1864 the First Legislative Assembly of the Territory of Montana by the enactment of Section 430 of the Bannack Statutes at page 130 incorporated into the law of this jurisdiction the above common-law rule and formula for computing time *by excluding the first day and including the last* which at all times since has been and now is the written law of this jurisdiction.

The law of Montana expressly provides:

"*Computation of time.* The time in which *any act* provided by law is to be done is computed by excluding the first day and including the last * * *." R. C. M. 1947, section 90-407. Emphasis supplied.

In Schnepel v. Mellen, 3 Mont. 118, 126, the court quoted with approval from In re Goswiler's Estate, 3 Pen. & W., Pa., 200, wherein it is said that, "whenever by rule of court or any act of the legislature a given number of days are allowed *to do an act,* or it is said that *an act* may be done within a given number of days, the day in which the rule is taken or the decision made *is excluded,* and if one or more Sundays occur within the time,

they are counted unless the last day falls on Sunday, in which case *the act* may be done on the next day.'' Emphasis supplied.

The question for determination involves the computing of time,—the counting back of the days from April 3, 1954, *the day of election,* to February 22, 1954, the day of the holding of the two challenged public nominating meetings. See State ex rel. Earley v. Batchelor, 15 Wash. (2d) 149, 130 Pac. (2d) 72, 74; Luedke v. Todd, 109 Colo. 326, 124 Pac. (2d) 932, 934; Cosgriff v. Board of Election Com'rs, 151 Cal. 407, 91 Pac. 98, 99; Barron v. Green, 13 N. J. Super. 483, 80 A. (2d) 586.

The Legislature, by the enactment of R. C. M. 1947, section 90-407, has prescribed the one and only lawful rule or formula for computing both the maximum and the minimum number of days designated in section 75-1606, supra. Section 90-407 says compute ''by *excluding* the first day and *including* the last'' day.

''Where the statute requires the filing of a petition *not less than twenty days before the primary,* the computation is made by counting back twenty days, excluding the day of election, and a petition filed on the twentieth day is in time * * *.'' 18 Am. Jur., Elections, section 130, pages 262, 263. Emphasis supplied.

Here the two terminal days are (1) April 3rd and (2) February 22nd, so by counting the days backward from April 3rd, which day is excluded from the count, it will be found that February 22nd was 40 days before the day of election, which latter day is *included* in the count in compliance with the provisions of section 90-407, supra. Thus were the challenged nominating meetings of February held on precisely the 40th day before the day of election and therefore within the time prescribed. Being within time they are valid. See State ex rel. Earley v. Batchelor, supra; Luedke v. Todd, supra, and Cosgriff v. Board of Election Com'rs, supra.

As was said in the concluding paragraph of Barron v. Green, 13 N. J. Super. 483, 80 A. (2d) 586, 589, ''In view of the authorities cited, we must conclude that the plaintiff, having filed

his petitions in due form on the fortieth day before May 8, 1951, is entitled to have his name placed on the ballot * * *.''

In the phrase ''nor less than forty (40) days before the day ▮ of election'' appearing in section 75-1606, supra, the word ''less'' means not a fewer or smaller number of days than 40 days before the day of election. Forty days are 40 days and not 39 days nor 38 days nor any fewer or smaller number of days than 40. Forty dollars is precisely $40 and not $39.99 or any smaller or lesser amount than $40.

To better illustrate the computation the portions of the calendar for the months of February, March and April 1954, involved in the instant computation, are here set out:

|          | Sun. | M. | T. | W. | Th. | F. | Sat. |
|----------|------|----|----|----|-----|----|------|
| February |      | 22 | 23 | 24 | 25  | 26 | 27   |
|          | 28   |    |    |    |     |    |      |
| March    |      | 1  | 2  | 3  | 4   | 5  | 6    |
|          | 7    | 8  | 9  | 10 | 11  | 12 | 13   |
|          | 14   | 15 | 16 | 17 | 18  | 19 | 20   |
|          | 21   | 22 | 23 | 24 | 25  | 26 | 27   |
|          | 28   | 29 | 30 | 31 |     |    |      |
| April    |      |    |    |    | 1   | 2  | 3    |

It is clear that when the time is computed in the manner required by section 90-407 the *last day* on which the public nominating meeting could be held was February 22nd, such day being the 40th and *last day* of the period allowed therefor under the provisions of section 75-1606, supra.

In Kelly v. Independent Pub. Co., 45 Mont. 127, 135, 122 Pac. 735, 737, 38 L. R. A., N. S., 1160, this court, after quoting the Montana statute, section 90-407 (then section 8067, Rev. Codes of 1907) said that its purpose ''was to establish a general rule for the computation of time, in order that confusion may be avoided and harmony prevail.''

Confusion was avoided and harmony did prevail in the decisions of this court so long as it computed the time in which an act provided by law is to be done in the manner and in conform-

ity with the rule so prescribed by the legislature in section 90-407 of the Revised Codes of Montana of 1947.

However, in 1927, confusion came with State ex rel. St. George v. Justice Court of Silver Bow Township, 80 Mont. 53, at page 62, 257 Pac. 1034, at page 1037 wherein the court, speaking through Mr. Justice Myers, declined to either follow or apply the statutory rule which requires *"excluding* the first day and *including* the last,"* section 90-407, then section 10707, Rev. Codes of 1921, and in lieu thereof adopted and declared a different rule which *excludes both terminal days* from the computation and thus produces a different result than does the stattory rule, R. C. M. 1947, section 90-407.

In ignoring and rejecting the statutory rule of computation prescribed in R. C. M. 1947, section 90-407, the court observed that it believed the rule which excludes from the computation both terminal days "to be the sounder and based on the better reasoning", 80 Mont. at page 63, 257 Pac. at page 1038, thereby overlooking: (1) That this court is not a law-making body; (2) that it cannot supply deficiencies in legislation, State ex rel. Koefod v. Board of County Com's, 56 Mont. 355, at page 361, 185 Pac. 147; (3) that with the accuracy or wisdom of the legislative view this court may not concern itself, Hill v. Rae, 52 Mont. 378, at page 386, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210; (4) that this court cannot substitute judicial opinion of expediency for the will of the legislature, State v. Centennial Brewing Co., 55 Mont. 500, at page 513, 179 Pac. 296; (5) that the policy of the law is a matter for legislative control and does not concern the courts, Wheeler & Motter Mercantile Co. v. Moon, 49 Mont. 307, at page 314, 141 Pac. 665; (6) that it is the duty of this court to construe the law as it finds it, Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, at page 206, 293 Pac. 294; and (7) that to construe a statute is to ascertain the intent of the legislature and not substitute the court's discretion for the clearly expressed intent and mandate of the legislature, R. C. M.

1947, section 93-401-15; General Finance Co. v. Powell, 112 Mont. 535, at page 540, 118 Pac. (2d) 751.

The legislative assembly has expressly provided that, ''In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted, or to omit what has been inserted;* and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.'' Emphasis supplied. R. C. M. 1947, section 93-401-15.

The case of State ex rel. St. George v. Justice Court, supra, is obviously and fundamentally unsound, yet it has been cited with approval and followed in three subsequent cases, viz.: State ex rel. Bevan v. Mountjoy, 82 Mont. 594, 268 Pac. 558; Novack v. Pericich, 90 Mont. 91, 300 Pac. 240, and State ex rel. Sullivan v. District Court, 122 Mont. 1, 196 Pac. (2d) 452, all of which ignore and reject the valid written law of this jurisdiction duly and regularly enacted by the legislative department and assume to adopt and declare another and different rule of computation that has no legislative sanction whatever and that is entirely out of harmony with the provisions of the statute, section 90-407, supra, which sets forth and is the *written* law of this jurisdiction.

*Law* is a solemn expression of the will of the supreme power of the state and is expressed (1) by the Constitution and (2) by the statutes. See R. C. M. 1947, sections 12-101 and 12-102.

The *written law* of this state is therefore contained in its Constitution and statutes and in the Constitution and statutes of the United States. R. C. M. 1947, section 93-1001-9.

The *written law* of this state must prevail as against the declaration or promulgation by this court of. an opposing rule at variance with and contrary to such *written law*.

In Novack v. Pericich, 90 Mont. at page 94, 300 Pac. at page 241, the justice assigned to write the court's pronouncement reluctantly followed the St. George and Bevan cases, supra, but stated that in the opinion of himself and another justice ''the

St. George and Bevan cases, supra, are fundamentally unsound, and we subscribe to the conclusion here announced solely on the ground of *stare decisis.*''

The later case of State ex rel. Sullivan v. District Court, supra, rests upon the same insecure foundation and is equally unsound for it like its three predecessors neither follows nor applies the clear mandate and plain provisions of section 90-407 which form a part of the *written law* of this jurisdiction.

''The rule of stare decisis is not so imperative or inflexible ▉ as to preclude a departure therefrom in any case, but its application must be determined in each case by the discretion of the court, and previous decisions should not be followed to the extent that error may be perpetuated and grievous wrong be the result.'' 21 C. J. S., Courts, section 193, pages 322, 323.

In Coleman v. Page's Estate, 202 S. C. 486, 25 S. E. (2d) 559, 560, the court said: ''Where conflicting decisions appear to have been made by inadvertence or otherwise, and the position of the Court is thereby rendered uncertain, the rule of stare decisis does not necessarily apply.''

In United States v. State of Minnesota, 8 Cir., 113 F. (2d) 770, at pages 774, 775, the court said: ''The strong respect for precedent which inheres in our legal system has its qualifications and limitations. It does not call for a blind, arbitrary and implicit following of precedent, but recognizes * * * that it is more important as to far reaching judicial principles that the court should be right than that it merely be in harmony with its previous decisions. Such a respect for precedent balks at the perpetuation of error, and the doctrine of stare decisis is, after all, subordinate to legal reason and is properly departed from if and when such departure is necessary to avoid the perpetuation of error.''

In In re Murphy's Estate, 99 Mont. 114, at page 125, 43 Pac. (2d) 233, at page 237, this court said that ''a former decision of this court * * * will not be followed if not founded upon correct reasoning. [Citing case.] In other words, this court will

overrule a former decision of this court * * * when convinced that such decision is not sound.''

Courts are not inclined, any more than men out of courts, to admit that they have erred but where the court has fallen into error upon a question controlled and determined by a valid, unambiguous statute with which certain of this court's decisions are in direct conflict then it becomes the plain duty of the court to retrace its steps and overrule such clearly erroneous decisions. Accordingly the St. George, Bevan, Novack and Sullivan cases, supra, are overruled.

While it has been urged that section 75-1606, supra, is violative of the Constitution, yet it is elementary that this court will determine the constitutionality of a statute only when such determination is necessary to a decision in the case before it. Durocher v. Myers, 84 Mont. 225, 233, 274 Pac. 1062; State v. Tesla, 69 Mont. 503, 507, 223 Pac. 107; Monarch Min. Co. v. State Highway Commission, 128 Mont. 65, 270 Pac. (2d) 738.

Here it is wholly unnecessary to a determination of the instant case to pass upon the constitutionality of the provisions of section 75-1606, R. C. M. 1947. Clearly there should have been an election held in public school district No. 2 on April 3, 1954, at which the names of Richard W. Burns, William S. King and Alice D. Ryniker, the nominees of the public caucus held February 9, 1954, and the names of Sterling M. Wood, M. R. Colberg and Earl E. Tiffany, the nominees of the public nominating meetings held February 22, 1954, should have been placed on the ballot so that the qualified electors of public school district No. 2 be afforded the opportunity to vote for their choice of the candidates for the office of school trustees of the district.

Accordingly the order disallowing appellants' motion to quash and the district court's judgment are vacated, set aside and reversed, the peremptory writ of prohibition is dissolved,—the application therefor made to the district court is dismissed,—respondents' motion for their costs and attorney's fees is denied,—the appellants are allowed their costs in the district court and on this appeal and remittitur will issue forthwith.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOT-TOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

The question presented by this appeal is whether an election must be held in school district No. 2 of Yellowstone County to select trustees.

The facts giving rise to the controversy are these: On February 9, 1954, a nominating caucus was regularly held under R. C. M. 1947, section 75-1606, to nominate candidates for trustees for the election proposed to be held on April 3rd. Relators were nominated at that caucus as candidates to fill three expiring terms. On February 22nd two other caucuses were held at which Sterling Wood, Earl E. Tiffany and M. R. Colberg were nominated as candidates. Relators contend that the last named three were not properly nominated because the caucuses were held on a day less than forty days next preceding April 3rd. The district court ruled that the last three were not properly nominated and hence that an election need not be held.

The applicable statute is that part of R. C. M. 1947, section 75-1606, reading as follows: "In districts of the first class, no person shall be voted for or elected as trustee unless he has been nominated therefor at a bona fide public meeting, held in the district not more than sixty (60) days nor less than forty (40) days before the day of election * * *."

The conclusion reached by the court that the meeting at which defendants were nominated came too late was correct. State ex rel. Bevan v. Mountjoy, 82 Mont. 594, 268 Pac. 558; State ex rel. St. George v. Justice Court, 80 Mont. 53, 257 Pac. 1034; Novack v. Pericich, 90 Mont. 91, 300 Pac. 240; State ex rel. Sullivan v. District Court, 122 Mont. 1, 196 Pac. (2d) 452. Defendants attempt to distinguish the foregoing cases from the instant case, but they are in fact not distinguishable. The Bevan case was an election case construing a statute practically identical with the statute here involved. Attorney General Bottomly ruled on the identical question here presented and held under

facts identical with those here that the meeting was too late. 21 Op. Atty. Gen., Op. No. 131, page 178.

There are decisions of other courts to the contrary as pointed out in the majority opinion. This court recognized the two lines of authorities in the case of State ex rel. St. George v. Justice Court, supra, by saying [80 Mont. 53, 257 Pac. 1038]: "There is no lack of decisions holding to the contrary of those we have cited; there appear to be quite as many; but we believe the rule declared by those cited to be the sounder and based on the better reasoning and to be in accord with the intent of our statutes."

This court in that case adopted the view that when an act is to be done not less than a given number of days before a given time, full days are contemplated. The court reasoned this way: That had the statute required the act to be done not less than one day before a certain date the doing of the act the day before the date would not be in time because it might be done at 11:55 p.m. the day before and hence that would not be "not less than one day before the date." It would in fact be only five minutes before the date whereas the required number of full days are contemplated under the statute.

Section 90-407 which provides for excluding the first day and including the last was not overlooked. It was expressly referred to and discussed by the court. It was held inapplicable because of the wording of the statute requiring service the summons "at least four days 'before' the return day" (Rev. Codes 1921, section 9632, now R. C. M. 1947, section 93-6707, as amended) which the court held contemplated four full days.

The late cases from this court as above noted adhered to that view. To hold the nominating meeting on the 40th day before the election counting back from the day of election is not in time. State ex rel. Bevan v. Mountjoy, supra.

I concede that it is proper to depart from the doctrine of *stare decisis* in order to avoid perpetuating error. But where as here there are two lines of authority and the· court after careful consideration adopts one line and rejects the other, who is to

say that the court adopted the wrong view? The only changes since that view was adopted in the St. George case, decided nearly 30 years ago and followed ever since, are in the personnel of this court and the litigants affected.

I think the trial judge was right in following the rule clearly stated and strictly followed in this jurisdiction for more than a quarter of a century and that it is now error to overrule those decisions.

Defendants contend that R. C. M. 1947, section 75-1606, so far as it dispenses with the necessity for an election is unconstitutional as in conflict with Art. IX, section 2, Art. IX, section 10, and Art. III, section 5, of our Constitution. If this view had merit then I would concur in the result reached in the majority opinion but for a different reason. However in my opinion there is no merit in the contention made on this point.

The pertinent langauge of R. C. M. 1947, section 75-1606, dispensing with the necessity of an election is as follows: "In the event there be held only one (1) such public meeting, and only one (1) candidate be nominated for each term to be filled then and in that event no election need be held and the clerk of such district shall certify such facts to the board of trustees of the district, acting as a board of canvassers who shall thereupon certify the election of such persons to the county superintendent of schools."

The right to vote at an election is a privilege conferred by the state and not a natural right, and is a privilege which may be waived. 29 C. J. S., Elections, section 2, page 23. The exercise of the right may be regulated by the legislature, providing that the regulatory laws are reasonable. Id., section 7, page 26; 18 Am. Jur., Elections, section 6, page 182; Gerende v. Board of Sup'rs, 341 U. S. 56, 71 S. Ct. 565, 95 L. Ed. 745. Thus it has provided that the privilege is waived if the voter fails to register.

The requirement of section 75-1606, supra, that no person shall be voted for unless he has been nominated, as therein provided, is a reasonable requirement, and the privilege of

voting for a person for school trustee is waived where he is not nominated at a meeting at which at least 20 qualified electors are present.

In speaking of this question in Chamberlin v. Wood, 15 S. D. 216, 88 N. W. 109, 111, 56 L. R. A. 187, the Supreme Court of South Dakota said: "The legislature, therefore, having in effect limited the right of the elector to voting for candidates whose names are printed on the official ballots, he can only exercise the right in the manner prescribed. But the elector is not thereby necessarily deprived of the right of suffrage, as he has the same right as any other elector to secure the printing of the name of his candidate upon the official ballot in the manner prescribed by law, namely, by nomination of some political party, or by securing the signatures of 20 electors, in the case of county office, to a certificate. This may occasion the elector some inconvenience and labor, but these constitute no objection to the law. In fact, the law requires many acts to be done by the elector not required under former laws, but these requirements have been generally held to be constitutional. We see no reason why the law as laid down by the courts in regard to those requirements should not be applicable to this case."

The requirement that the name of a candidate may be placed upon the ballot only upon petition of 15 qualified electors was held to be a reasonable regulation in McKenzie v. Boykin, 111 Miss. 256, 71 So. 382, whereas the requirement of 500 up to 2,000 signatures has been held unreasonable, Jackson v. Norris, 173 Md. 579, 195 A. 576, as has the requirement of 250 signatures, Barr v. Cardell, 173 Iowa 18, 155 N. W. 312.

So far as this case is concerned I have assumed that all the constitutional provisions relating to elections have application to school elections although a statement is made in Lorang v. High School District, 126 Mont. 204, 247 Pac. (2d) 477, that they do not apply to school elections.

The design of the statute was to save the expense of an election on the supposition that if a candidate could not procure his

nomination at a meeting of 20 electors he probably could not be elected if an election were held and that the election would be an idle act. The requirement is a reasonable one and in my opinion the court was right in entering the judgment appealed from.

I think the judgment should be affirmed.

MR. JUSTICE ANDERSON: (dissenting)

I concur in the above dissenting opinion of Mr. Justice Angstman.